IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

OCONEE COUNTY SCHOOL DISTRICT,  *

    Plaintiff,  *

vs.  *

                       CASE NO. 3:14-CV-72 (CDL)

A.B., *by and through* L.B.,  *

    Defendants.  *

---

## O R D E R

The present motion for the recovery of litigation expenses demonstrates what happens when counsel (on both sides) lose sight of what is in the best interest of their clients. Instead of working collaboratively to promptly resolve the issues affecting the disabled student as contemplated by the Individuals with Disabilities Education Act, counsel reflexively bow their backs and prepare for all-out war. Chest-thumping with the inevitable increased fee billing delays relief for the innocent child and increases the expense for the taxpayers who end up funding the litigation. The Court is not completely satisfied with the result it reaches today, but under the circumstances, it is the best that it can do under the law. In the future, counsel for both parties would be well advised to contemplate the importance, particularly in these types of cases, of early resolution.

Defendant A.B. is a student with a disability covered by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, as amended by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647. A.B. suffers from potentially life-threatening seizures. He and his mother, L.B., brought a Due Process Complaint against Plaintiff Oconee County School District because the School District refused to provide A.B. with an aide trained to administer his seizure medication on the bus to and from school. Georgia Office of State Administrative Hearings Administrative Law Judge Kimberly W. Schroer ruled in favor of A.B., finding that A.B. was entitled to an amended individualized education plan that provides for an aide trained to administer his seizure medication on the school bus. Compl. Ex. 1, *A.B. v. Oconee Cnty. Sch. Dist.*, OSAH-DOE-SE-1417873-108-SCHROER, at 48-49 (Apr. 8, 2014), ECF No. 1-1 [hereinafter ALJ Order]. The School District appealed, and the Court affirmed the ALJ's final decision. *Oconee Cty. Sch. Dist. v. A.B., ex rel. L.B.*, No. 3:14-CV-72 (CDL), 2015 WL 4041297 (M.D. Ga. July 1, 2015) [hereinafter *A.B. II*]. As the prevailing parties in this action, A.B. and L.B. (collectively, "the Family") seek costs in the amount of $1,893.98. The School District does not object to a cost award of $1,893.98, and the Family is awarded costs in that amount. The Family also seeks attorney's fees in

the amount of $274,751.14.   The School District contends that
the Family should recover no more than $102,167.00 in attorney's
fees.   As discussed in more detail below, the Court awards the
Family attorney's fees in the amount of $183,833.75.

DISCUSSION

Under Federal Rule of Civil Procedure 54, "costs-other than
attorney's fees-should be allowed to the prevailing party." Fed.
R. Civ. P. 54(d)(1).   In addition, the IDEA provides that "the
court, in its discretion, may award reasonable attorneys' fees
as part of the costs . . . to a prevailing party who is the
parent of a child with a disability."     20 U.S.C.
§ 1415(i)(3)(B)(i)(I).   The School District does not dispute
that A.B. and L.B. are entitled to costs and at least some
attorney's fees as prevailing parties under Rule 54(d) and the
IDEA; the Family sought to prove that the School District denied
A.B. a free appropriate public education by failing to provide
adequate health services on the bus to and from school, and the
ALJ and the Court agreed.   *A.B. II*, 2015 WL 4041297, at *9; *see*
*Mitten ex rel. Mitten v. Muscogee Cty. Sch. Dist.*, 877 F.2d 932,
936 (11th Cir. 1989) (finding that "prevailing party" under IDEA
has the same meaning as under 42 U.S.C. § 1988); *see also*
*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("[P]laintiffs
may be considered 'prevailing parties' for [§ 1988] attorney's
fees purposes if they succeed on any significant issue in

litigation which achieves some of the benefit the parties sought in bringing suit." (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978))).

"There is no precise rule or formula" for making a fee determination, but the starting point for calculating a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 436.  The resulting product is the lodestar, and there is a "strong presumption" that the lodestar figure represents a reasonable fee.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

## I.   Calculation of the Lodestar

### A.   Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  The Family employed the Zimring Law Firm to handle this matter before the ALJ and before the Court.  Three attorneys worked on the case: Jonathan Zimring, Janet Haury, and Debbie Haverstick.  Two paralegals worked on the case: Rachael Barron and Jill Bender.  The Family contends that $125 is a reasonable hourly rate for the time of Ms. Haury and Ms. Haverstick and that $100 is a reasonable hourly rate for the

4

time of Ms. Barron and Ms. Bender.  Defs.' Mot. for Att'y Fees
Ex. 6, Zimring Decl. ¶¶ 33, 35, ECF No. 36-6.  The School
District does not object to these rates, which are comparable to
rates the Court previously approved for associates and
paralegals.  *See Tompkins v. Darr*, No. 4:11-cv-93(CDL), 2013 WL
6198209, at *6 (M.D. Ga. Nov. 27, 2013).  The Court therefore
finds that these hourly rates are reasonable.[1]

The parties clash over the reasonable hourly rate for Mr.
Zimring's work.  The Family contends that $500 per hour is a
reasonable hourly rate for Mr. Zimring's work, while the School
District argues that $350 per hour is a reasonable rate.  Again,
"[a] reasonable hourly rate is the prevailing market rate in the
relevant legal community for similar services by lawyers of
reasonably comparable skills, experience, and reputation."
*Norman*, 836 F.2d at 1299.  The Family "bears the burden of
producing satisfactory evidence that the requested rate is in
line with prevailing market rates."  *Id.*  Here, "the 'relevant
market' for purposes of determining the reasonable hourly rate
for an attorney's services is" Athens, Georgia because that is
where the case was filed.  *Am. Civil Liberties Union of Ga. v.
Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  The Family,

---

[1] On the Family's chart of time entries, the paralegals are
occasionally billed at $125 instead of the claimed rate of $100.  The
Court will award the claimed rate of $100 per hour for these entries.

however, contends that it should recover Mr. Zimring's fees at his Atlanta, Georgia rate of $500 per hour.[2]

"A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Id.* "And 'market rate' means the hourly rate charged in the local legal market by someone with expertise in the area who is willing and able to take the case, if such an attorney exists." *Id.* "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* Therefore, the Court must determine whether the Family submitted sufficient evidence that there were no attorneys who were willing and able to handle the Family's claims at Athens-area rates.

The evidence before the Court is that when L.B. initially sought legal help for A.B. fifteen years ago, she "could not identify or locate attorneys with a specialty or expertise in handling special education matters in the [Athens] area," so she went to Atlanta and hired Mr. Zimring. Defs.' Mot. for Att'y Fees Ex. 7, L.B. Decl. ¶ 5, ECF No. 36-7. The Family pointed to

---

[2] The Family only seeks to recover Athens-area rates for the paralegals and other lawyers. Zimring Decl. ¶¶ 33, 35 & n.1.

no evidence, however, that L.B. tried but could not find local counsel for *this* case.[3]   The Family simply pointed to evidence that two Athens attorneys are not aware of other attorneys in the area who are currently willing and able to handle claims like A.B.'s.   Defs.' Mot. for Att'y Fees Ex. 9, Beasley Decl. ¶ 10, ECF No. 36-9 ("I know of no attorneys in the Middle District of Georgia that handle [IDEA] cases on behalf of children and only one other attorney in Atlanta who does some of this type of work."); Defs.' Mot. for Att'y Fees Ex. 10, Tolley Decl. ¶ 4, ECF No. 36-10 (stating that he is "not personally aware of any counsel in Athens that handle" IDEA cases).   But the School District presented evidence that at least two attorneys near Athens handle special education cases in the Athens area.   Pl.'s Resp. Ex. 2, Hartley Aff. ¶ 4, ECF No. 42-2 (listing two attorneys with offices in Lawrenceville—about halfway between Athens and Atlanta—who have extensive experience in special education law and have represented clients in Athens).   The Family pointed to no evidence that L.B. sought to hire one of these attorneys (or a non-Athens attorney who would handle their case at Athens rates) but was unable to do so. Based on all of this evidence, the Court concludes that the

---

[3]  The Family notes that the School District did not "name a single attorney practicing in Oconee or Clarke who was available to L.B." Defs.' Reply Br. in Supp. of Mot. for Att'y Fees 4, ECF No. 44.   But the Family has the burden to "show a lack of attorneys practicing in that place who are willing and able to handle [its] claims." *Barnes*, 168 F.3d at 437.

Family has not met its burden of establishing that it should recover non-local rates for Mr. Zimring's work.

The next question is whether $500 is a reasonable hourly rate for Mr. Zimring's work—in other words, whether the claimed rate of $500 per hour was "charged in similar cases for similar clients by lawyers of similar skill, experience and reputation." *Norman*, 836 F.2d at 1305; *accord Maner v. Linkan LLC*, 602 F. App'x 489, 493 (11th Cir. 2015) (listing factors for courts to consider in determining reasonable hourly rate). "[T]he best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill." *Norman*, 836 F.2d at 1301. What a lawyer charges his paying clients "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'" *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (per curiam) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Here, Mr. Zimring initially billed L.B. $450 for his work on this matter, then increased his hourly rate to $475 and again to $500 per hour. Zimring Decl. ¶ 31. It is not clear from the present record when each different billing rate was in effect, and the Family seeks to recover at a rate of $500 per hour for all of Mr. Zimring's time. But there is no evidence in the

present record of how much L.B. actually *paid* for Mr. Zimring's services; rather, the evidence before the Court is that L.B. made some payments but could not "keep up with the costs of all [the Zimring firm's] bills." Zimring Decl. ¶ 31; *accord* L.B. Decl. ¶ 8 (stating that she only made "periodic payments").

The Family also pointed to evidence that one Athens lawyer believes that $500 is a reasonable hourly rate for Mr. Zimring's work. *See* Beasley Decl. ¶ 11 (stating that $500 is a reasonable hourly rate, though it "is higher than the rates [he is] familiar with in the employment context"). But both Athens lawyers upon whose declarations the Family relies stated that Athens lawyers of Mr. Zimring's skill and experience typically charge around $350 per hour. Beasley Decl. ¶ 7 (noting that Beasley has "charged and been paid as much as $350 per hour" in employment cases); Tolley Decl. ¶ 11 (stating that experienced attorneys in Athens typically "bill clients between $350.00 to $390.00 per hour"). Based on all of this evidence, the Court concludes that $350.00 is a reasonable hourly rate for Mr. Zimring's time in this matter.

B.   Hours Reasonably Expended

Having determined the reasonable hourly rates for this matter, the Court turns to the second component of the lodestar: hours reasonably expended. Fee applicants must exercise billing judgment. *Hensley*, 461 U.S. at 434. In other words, fee

applicants must exclude from their applications "excessive, redundant or otherwise unnecessary" hours: "hours 'that would be unreasonable to bill to a client and therefore to one's adversary.'" *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights . . . ." *Norman*, 836 F.2d at 1301. Furthermore, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440; *Norman*, 836 F.2d at 1302. In summary, the Court should exclude hours that were not reasonably expended by counsel, making exclusions for excessive or unnecessary work and for work on discrete unsuccessful claims. *Hensley*, 461 U.S. at 434, 440; *Norman*, 836 F.2d at 1301-02.

In support of its fee application, the Family submitted a scanned PDF chart containing the hours spent by each timekeeper on tasks for this matter.[4]   Mr. Zimring represents that he reduced the number of hours for certain time entries, but he did not clearly explain how much or why.   Zimring Decl. ¶ 24.   Mr.

---

[4] For future reference, a PDF converted directly from native format (or, better yet, a copy of the chart in its native format) would have been far more helpful.

Zimring also represents that he reduced the time sought by 3% for the administrative case (based on "billing judgment") and by 5% for the case before this Court (based on "billing judgment" and to address the Family's abandoned counterclaim).  *Id.*

The School District objects to the Family's fee petition on several grounds, and it submitted a chart that contains the Family's time chart plus the School District's response to each time entry.  The Court addresses each objection in turn.

### 1.   *Block Billing and Vague Entries*

The School District notes that many of the time entries are vague and "block billed," meaning that single time entries lump together several tasks without breaking down how much time was spent on each task.  Citing *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012) (per curiam), the School District argues that the Court should apply across-the-board reductions for block billing and vague time entries.  In *Ceres*, the Eleventh Circuit found that the district court did not abuse its discretion in applying a 10% reduction for block billing that included vague entries like "continuing work on case."  *Id.*  In contrast, here, the time entries are precise enough to permit the School District and the Court to understand the reason for each time entry.  The School District's chief complaint regarding the block billing seems to be that many time entries "lump research and drafting

11

together," making it impossible to tell whether counsel spent a reasonable amount of time on research.   Pl.'s Resp. to Def.'s Mot. for Att'y Fees 14, ECF No. 42.   But it is perfectly natural to perform research during the drafting process and to draft portions of a brief while researching.   The Court declines to make reductions on this basis.

### 2.   *Tasks Prior to Due Process Complaint*

The Family seeks to recover fees for the three time entries (totaling 0.7 hours) before Mr. Zimring officially began drafting the Due Process Complaint.   The School District contends that the time was not reasonably expended on the litigation, but the time entries clearly suggest that L.B. was contemplating a Due Process Complaint and that she was consulting with Mr. Zimring about it.   *See, e.g.,* Defs.' Reply Br. in Supp. of Mot. for Att'y Fees Ex. 21, Administrative Fee Chart 1, ECF No. 44-9 (billing for conferring with L.B. on "potential status if situation continues, claims," "post-IEP rights," and "next step").   The Court thus declines to exclude the 0.7 hours.

### 3.   *Time Relating to Resolution Meeting*

The School District objects to any time the Family's counsel spent attending or relating to the resolution meeting of A.B.'s IEP team, which is required under 20 U.S.C. § 1415(f)(1)(B)(i).   Under 20 U.S.C. § 1415(i)(3)(D)(ii),

"[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action." And, under 20 U.S.C. § 1415(i)(3)(D)(iii), a resolution meeting is not "a meeting convened as a result of an administrative hearing or judicial action." Therefore, under the statute, an attorney's time relating to the resolution meeting is not compensable.

The Family seeks an award of fees for 30.8 hours spent on "Resolution Meeting Tasks and Continued Preparation for Meeting, Settlement and Case." *E.g.*, Defs.' Reply Br. in Supp. of Mot. for Att'y Fees Ex. 21, Administrative Fee Chart 2. The Court reviewed the time entries. Some of them appear to relate exclusively to the resolution meeting. *Id.* (billing 0.8 hours on 11/20/2013 for "Exchange of letters, research and work on resolution meeting issues, emails to and from Eddy on resolution meeting and tasks, timing and position"). Others do not. *Id.* at 3 (billing 1.5 hours on 12/06/2013 for "Begin work on summary judgment motion, conference with client through email, review record and claims, emails to witnesses"). Based on the Court's review, the time entries on 11/20/2013, 11/21/2013, 11/22/2013, 11/22/2013, 11/27/2013, 11/29/2013, 12/02/2013, 12/03/2013,

13

12/03/2013, and 12/04/2013 relate to the resolution meeting and are not compensable.[5]   The Court thus excludes those 12.4 hours.

> 4.   *Time Billed at Attorney Rates for Paralegal Functions and Time Billed for Clerical Duties*

The School District objects to several time entries, contending that the time is billed at attorney rates for paralegal functions or at attorney or paralegal rates for clerical tasks.   The Supreme Court has noted that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate" because "[s]uch non-legal work may command a lesser rate" and "[i]ts dollar value is not enhanced just because a lawyer [or paralegal] does it." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).   And the Eleventh Circuit has noted that "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306.   The Family did not respond to this argument.

The Court reviewed the time entries the School District flagged as being clerical work performed by a paralegal or

---

[5] The Family's counsel categorized these tasks as "Resolution Meeting Tasks and Continued Preparation for Meeting, Settlement and Case." Therefore, if the Court could not readily discern that an entry did not relate to the resolution meeting, the Court concluded that it did.

attorney or paralegal work performed by an attorney.   The vast majority of these entries fall into "a gray area of tasks that might appropriately be performed either by an attorney or a paralegal," and the Court declines to exclude them.  *Jenkins*, 491 U.S. at 288 n.10.  A couple of the entries do, however, appear to be purely clerical (updating pleading files and calling the judge's chambers to advise that counsel would be late due to car problems).  The Family did not produce evidence of a reasonable hourly rate for these 1.1 hours, so the Court excludes them.

### 5.   *Time Billed for Open Records Act Requests*

The School District objects to time the Family's counsel spent on making Georgia Open Records Act requests for the School District's attorneys' billing records.   The Family withdrew its request for those fees (8.8 hours totaling $1,812.50), so the Court excludes those 8.8 hours.

### 6.   *Travel Time*

Mr. Zimring represents that travel time is billed at a 50% rate.   Zimring Decl. ¶ 27.   The School District notes that in the Family's initial summary chart, the discounted 50% rate for travel time on 1/27/14, 2/3/14, 2/6/14, 2/14/14, and 2/26/14 was not applied, although the Family acknowledges that it should have been for all entries except 2/14/14.   Defs.' Reply Br. in Supp. of Mot. for Att'y Fees 8 n.7.   In addition, the summary

chart for Mr. Zimring's time on 1/27/14, 2/14/14, and 2/26/14 lumps together travel time and time spent on other tasks. Defs.' Reply Br. in Supp. of Mot. for Att'y Fees Ex. 21, Administrative Fee Chart 13, 15-16, ECF No. 44-9.

To remedy these issues, the Family suggests that one hour should be deducted from each time entry except the entry on 2/14/14, which notes a partial charge for "travel to courthouse." Because the entries that relate exclusively to travel generally reflect a travel time of two hours, the suggested deductions have the effect of reducing the fee sought for travel by half, and the Court finds that this approach is fair. With regard to the 2/14/14 time entry, "travel to courthouse (partial [charge])" is listed as one of six tasks for which Mr. Zimring billed a total of 6.75 hours. *Id.* at 15. Mr. Zimring listed actual hours spent on two of those tasks—prepare for hearing (1.25) and attend hearing (4.75)—but did not explain how the remaining forty-five minutes he billed should be allocated among the four remaining tasks. Even if the entire forty-five minutes had been billed to travel, that would be reasonable since all the other travel entries are for two hours (now reduced to one).

7. *Time Entry Dated 1/16/14*

The School District objects to the time entry on 1/16/14 for 4.1 hours by Ms. Haverstick for "Internal consult with JAZ

regarding discovery calendar; draft response to Plaintiff's emergency motion to extend stay of discovery; begin brief in reply to District's response to motion to distribute funds." *Id.* at 10.   According to the School District, this time entry does not relate to A.B.'s case because there was no discovery in the administrative proceedings, there were no funds to distribute, and there were no motions regarding a stay of discovery or a distribution of funds.   The Family did not respond to this argument or explain these discrepancies.   The Court thus excludes the 4.1 hours.

### 8.   Time Relating to Delayed IEP Claim

The School District asserts that the Family did not prevail on its claim before the ALJ related to the School District's delay in finalizing A.B.'s IEP for the 2013-14 school year. That is true; the ALJ concluded that the delay did not cause any substantive harm to A.B. and that the delay was partly attributable to L.B.   ALJ Order 7-8 & n.12.   The School District did not, however, explain how this issue should affect the Family's fee application.   As the Supreme Court noted, in some cases a fee applicant's "claims for relief will involve a common core of facts or will be based on related legal theories"—since "[m]uch of counsel's time will be devoted generally to the litigation as a whole, [it is] difficult to divide the hours expended on a claim-by-claim basis.   Such a lawsuit cannot be

viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435. The Family's complaints related to the delayed IEP were part of the much larger history of antagonism between the School District and L.B and are thus part of the common core of facts in this case. The School District did not offer any suggestion for how to parse out this issue, which was a very minor part of the ALJ's overall decision, and the Court declines to make any exclusions based on it.

### 9. The Counterclaims

The School District argues that the Family should not recover fees associated with its abandoned counterclaims. The Court agrees. The Family brought counterclaims against the School District. When the School District filed a motion to dismiss the counterclaims, the Court painstakingly reviewed the Family's seventy-six page answer and found three counterclaims hidden within the allegations, "albeit by straining the concept of notice pleading." *Oconee Cty. Sch. Dist. v. A.B. ex rel. L.B.*, No. 3:14-CV-72 (CDL), 2015 WL 196437, at *2 (M.D. Ga. Jan. 15, 2015) [hereinafter *A.B. I*]. In the counterclaims, the Family contended that the ALJ erred by reducing the Family's reimbursement for transportation costs and that the ALJ erred by requiring L.B. to sign a release to allow School District personnel to speak with A.B.'s doctors. The Family also asserted a counterclaim related to the School District's alleged

continued hostility toward the Family.   But at the summary judgment stage, the Family completely abandoned its claims that the ALJ erred, and the Family did not produce any evidence regarding the alleged continued hostility.   *A.B. II*, 2015 WL 4041297, at *9 & nn. 4 & 5.   The Family thus did not prevail on any of its counterclaims.

To account for the abandoned counterclaims, the School District suggests that the Court make a 25% across-the-board reduction to the hours counsel spent on the proceedings before this Court.   Even the Family appears to acknowledge that there should be some reduction based on the abandoned counterclaims, suggesting a 5% across-the-board reduction.[6]   Zimring Decl. ¶ 24. The Court finds that there is a simpler, more precise way: the Court will exclude all 29.95 hours counsel spent defending the counterclaims against the School District's motion to dismiss and will exclude half of the 24.5 hours counsel spent drafting the seventy-six page answer and counterclaim.

---

[6] Mr. Zimring represented that he reduced the time sought for the case before this Court by 5% based on "billing judgment" and to address the abandoned counterclaims.   Zimring Decl. ¶ 24.   It is not clear from the present record how much of the reduction is attributable to the counterclaim and how much is attributable to "billing judgment," so the Court cannot tell what, if any, portion of the 5% across-the-board should perhaps be restored before making more precise reductions that simply exclude the work counsel spent pursuing the abandoned counterclaims.   Given that this problem is exclusively due to the Family's failure to provide reasonably precise records on this point, the Court declines to make any restoration.

### 10.  *Excessive Time on Summary Judgment*

The School District contends that the Family's counsel spent an excessive amount of time on its summary judgment motion and on defending the ALJ's decision against the School District's summary judgment motion.  Based on the Court's review of the time records, the Family's attorneys spent approximately 155 hours—nearly four full work weeks—drafting a summary judgment motion defending the ALJ's order.  Such an expenditure of time might not be grossly excessive for a summary judgment motion with a lengthy statement of facts if the Family's counsel had been starting from scratch.  But the Family's attorneys had already researched and argued the issues before the ALJ; had the benefit of the ALJ's extremely thorough order with pinpoint citations to applicable legal authority and to the administrative record; and had, in its answer and counterclaims, described for the Court "in excruciating detail why the ALJ's decision in the Family's favor should be affirmed."  *A.B. I*, 2015 WL 196437, at *1.  For these reasons, the Court finds that the time spent on the Family's summary judgment motion (127.1 hours by Ms. Haverstick and 28.5 hours by Mr. Zimring) is clearly excessive and should be reduced by half.

The Family's attorneys also spent approximately 84 hours—more than two full work weeks—on the response to the School District's summary judgment motion.  Given that the Family's

attorneys had just filed a summary judgment motion on the exact same issues, again with the benefit of the work the attorneys had previously done before the ALJ and this Court, the time spent on the Family's response to the School District's summary judgment motion (50.8 hours by Ms. Haverstick and 33.25 hours by Mr. Zimring) is clearly excessive and should be reduced by half.

## II.  The Lodestar

Based on the foregoing considerations, the lodestar amounts to $183,833.75, as reflected in the table below:

| Name | Admin. Case Hours | Fed. Case Hours | Hourly Rate | Recoverable Fees |
|------|-------------------|-----------------|-------------|------------------|
| Zimring | 298.8 | 105 | $350 | $141,330.00 |
| Haverstick | 128.4 | 171.8 | $125 | $37,525.00 |
| Haury | 18.75 | 0 | $125 | $2,343.75 |
| Barron | 6.15 | 14 | $100 | $2,015.00 |
| Bender | 6.2 | 0 | $100 | $620.00 |
| **Total** | 458.3 | 290.8 | – | $183,833.75 |

## III. Adjustment to the Lodestar

After the Court calculates the lodestar, the Court may adjust the fee upward or downward based on the results obtained. *Hensley*, 461 U .S. at 434; *accord Norman*, 836 F.2d at 1302. Again, though, there is a "strong presumption" that the lodestar figure represents a reasonable fee.  *Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565.  "[A] downward adjustment to a lodestar is merited only if the prevailing party was partially successful in its efforts." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir.

1993).   The School District argues that L.B. was only partially successful before the ALJ and that the lodestar for the administrative proceedings should be reduced by 50%.

First, the School District argues that L.B. was only partially successful before the ALJ because the ALJ required L.B. to provide unfettered access to A.B.'s physicians.   But the ALJ did not.   The ALJ gave L.B. a choice: (a) sign a release allowing School District Personnel to speak with A.B.'s physicians or (b) the School District could maintain its procedure of attempting to get A.B. home or to school within five minutes for Diastat treatment, subject to the ALJ's requirement that the School District provide a trained aide to be on the bus ready to administer Diastat if the bus does not reach A.B.'s home or school within five minutes after a seizure begins.   ALJ Order 49.   Because the ALJ imposed the trained aide requirement regardless of whether L.B. granted access to A.B.'s doctors, L.B. achieved the main goal of her case.

Second, the School District points out that the ALJ found that L.B. was uncooperative.   But the ALJ also found that the School District was uncooperative and that both parties "share the blame for derailing the cooperative IEP process."   ALJ Order 48.   To account for L.B.'s share of the blame, the ALJ found that L.B.'s transportation cost reimbursement should be reduced by 50%.   The Court finds that this solution is sufficient.   The

fact of the matter is that the School District did not change its policy on Diastat for A.B. even though School District personnel knew that (1) A.B.'s seizures were increasing in frequency and duration, (2) the School District could not guarantee that A.B. would receive timely Diastat treatment under its general plan, (3) A.B.'s doctors prescribed Diastat for A.B. in the event of a prolonged seizure, (4) A.B.'s doctors believed that there was an unacceptable risk of life-threatening injuries associated with failing to treat a prolonged seizure promptly, and (5) the School District did not need any additional medical information to authorize administration of Diastat on the bus during community based instruction trips.   Thus, the ALJ concluded that the School District must provide a trained aide ready to administer Diastat on the bus in the event that the bus did not reach A.B.'s home or school within five minutes after the start of a seizure—whether or not L.B. acquiesced to its demands to authorize unfettered access to A.B.'s doctors.   Under these circumstances, the Court declines to make a downward adjustment to the lodestar.

## CONCLUSION

As discussed above, the Family is awarded costs in the amount of $1,893.98 and attorney's fees in the amount of $183,833.75 against the School District.

IT IS SO ORDERED, this 7th day of January, 2016.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA